IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONDA J. ESSER,

        Plaintiff,

v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

        Defendant.

Civil No. 3:15-cv-01939-MA

OPINION AND ORDER

MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION AND ORDER -

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

MARSH, Judge.

Plaintiff Ronda J. Esser seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") disability payments under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). For the reasons that follow, the decision of the ALJ is reversed and this matter is remanded for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on February 7, 2012, alleging disability beginning March 1, 1982. Plaintiff's application was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ convened a hearing on February 19, 2014. On March 11, 2014, the ALJ issued an unfavorable decision. The Appeals Council summarily denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for the purposes of review.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four.

*Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Plaintiff has the following severe impairments: borderline intellectual functioning vs. mild mental retardation; personality disorder, NOS; depressive disorder vs. adjustment disorder with anxiety; cannabis dependence; and cervical spondylosis. At step three, the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform light work, with the following limitations: she can lift ten pounds frequently and twenty pounds occasionally; she should engage in no more than occasional push/pull work with the arms bilaterally; she can perform no more than occasional climbing or crawling; she can perform no more than occasional overhead reaching bilaterally; she should avoid concentrated exposure to noise, vibration and hazards in the workplace; she is limited to unskilled, routine, repetitive SVP 1 or 2 work with no more than occasional contact with the public.

At step four, the ALJ found Plaintiff had no past relevant work. At step five, the ALJ concluded there are jobs existing in the national economy that Plaintiff is able to perform, such as small product assembly, packaging, or laundry sorter. Accordingly, the ALJ concluded plaintiff

has not been under a disability under the Act from the date of Plaintiff's application through the date of the decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 20 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Plaintiff argues the ALJ erred at step three of the sequential analysis by failing to consider listing 12.05C. Plaintiff contends that she has a valid IQ and other functional limitations that meet section 12.05 of the listing, "Mental Retardation," and therefore that the ALJ erred in failing to find her disabled at step three.

A claimant is presumptively disabled and entitled to benefits if he or she meets a listed impairment. *Staggs v. Colvin*, Case No. 6:15-cv-01060-MC, 2016 WL 4942002, at *4 (D. Or. Sept. 14, 2016). To "meet" a listed impairment, a disability claimant must establish that her condition satisfies each element of the listed impairment in question. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. § 404.1526).

The structure of Listing 12.05 for intellectual disability is different from that of the other mental disorder listings. In order to meet most mental disorder listings, a claimant must demonstrate the existence of impairment-related functional limitations that are incompatible with the ability to perform substantial gainful activity and that are the result of the mental disorder described in the listing. *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1052 (C.D. Cal. 2010). Listing 12.05 instead contains an introductory paragraph with the diagnostic description for mental retardation, and four sets of criteria (paragraphs A through D). *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A). If a claimant's impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, the claimant's impairment meets the listing and a finding of disability is mandated. *Id.*

The introductory paragraph of section 12.05 states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before

age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D or satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To satisfy section 12.05C, a claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* When a claimant's verbal, performance, and full scale IQs differ, "the lowest of these [is used] in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.6.c.

Plaintiff was born in 1963 and was 51 years old at the time of the ALJ Decision. Tr. 121. The record included evidence of a life-long learning disability that resulted in placement in special education throughout her childhood. Tr. 289-295. She graduated from high school with a modified special education diploma. Tr. 55.

On February 10, 2010, Sharon M. Laws, Ph.D., conducted a consultative neuropsychological examination of Plaintiff. Tr. 387-402. Dr. Laws administered a WAIS-IV, on which Plaintiff obtained a verbal scale IQ score of 70, a full scale IQ score in the range of 67-75, and a General Aptitude Index score of 69. Tr. 393-94. Dr. Laws concluded that the full scale IQ score "represents [plaintiff's] overall level of intellectual functioning." Tr. 39. Dr. Laws noted, however, that "given [plaintiff's] test taking behavior, this may be an underestimate of her overall level of intellectual abilities." Tr. 394. Dr. Laws did not otherwise comment on or call into question the validity of Plaintiff's IQ scores.

Plaintiff also has physical and other mental impairments imposing additional and significant work-related limitations of function. In addition to "borderline intellectual functioning vs. mild

mental retardation," the ALJ found Plaintiff has the severe impairments of personality disorder, depressive disorder, cannabis dependence, and cervical spondylosis, findings which are supported by ample evidence in the record. Accordingly, it appears on the face of the record that Plaintiff meets the 12.05C listing.

The ALJ did not address 12.05C. The ALJ did suggest that Plaintiff was not functionally mentally retarded, but the ALJ's failure to reference § 12.05 and, in particular, Listing 12.05C makes it unclear whether the ALJ considered the specific requirements of that section when he issued his decision. The ALJ discussed the IQ scores in the context of Plaintiff's level of functioning, but the listing does not speak to functioning - it speaks only to the IQ score itself. *Thresher v. Astrue*, 283 Fed. App'x 473, at *1 (9th Cir. 2008). The ALJ neither analyzed the validity of the score nor gave any reasons for rejecting the score's validity.

The validity of an IQ test is a question requiring medical assessment of the claimant's medical history and functional abilities. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(a) ("the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation"). Certainly, an ALJ can find that an IQ score is invalid, though the Ninth Circuit has not delineated what evidence an ALJ should consider in assessing validity. *Halyday v. Colvin*, Case No. 2:12-cv-01761 KJN, 2013 WL 4678791, at *4 (E.D. Cal. Aug. 30, 2013) (citing *Thresher*, 283 Fed. App'x, at *1). In any event, here the ALJ did not explicitly consider any evidence as to the validity of Plaintiff's IQ score.

The Commissioner argues the ALJ's discussion of Plaintiff's IQ scores in the context of her functional abilities implies a conclusion that the IQ scores were not valid, and that this Court can infer as much from the ALJ's discussion. I disagree. While the court may make limited inferences from unclear or poorly stated explanations, an ALJ's decision may not be upheld based on "*post hoc* rationalizations that attempt to intuit what the ALJ might have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); *see also Bowman Transp., Inc. v. Arkansas-Best Freight Systems, Inc.*, 419 U.S. 281, 286 (1974) ("[w]hile we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"). The ALJ was required to consider whether Listing 12.05C was met and failed to do so. His discussion of the IQ tests in the context of assessing Plaintiff's functional abilities for the purpose of establishing Plaintiff's RFC does not create an easily discernable path to how the ALJ would have addressed Listing 12.05C.

The ALJ's failure to address Listing 12.05 is not harmless. An ALJ's failure to acknowledge or analyze an IQ score in the 60 through 70 range might potentially be harmless if there was no evidence in the record to support the remaining elements of 12.05C. *Halyday*, 2013 WL 4678791, at *5. As noted, however, the record in this case contains evidence satisfying the remaining elements. Accordingly, it cannot be said that the ALJ's failure to assess the validity of Plaintiff's IQ scores amounts to harmless error.

The ALJ's failure to discuss Listing 12.05C at step three makes it unclear whether the ALJ "came to grips with the specific requirements of that section when she issued her decision."

8 - OPINION AND ORDER -

*Thresher*, 283 Fed. App'x, at *1). Accordingly, the decision must be reversed and remanded for clarification regarding the nature of the considerations applied at step 3.[1]  *Id.*

## CONCLUSION

The ALJ erred at step three in failing to address Listing 12.05C. Accordingly, IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED this 3 day of October, 2016.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

---

[1] Because reversal and remand is appropriate due to the ALJ's error at step three, and because a finding that Plaintiff meets the requirements of Listing 12.05C would prove dispositive, Plaintiff's further allegations of error need not be considered. *Barrera v. Colvin*, Case No. 6:12-cv-01631-CL, 2013 WL 6576178 at *5 (D. Or. Dec. 13, 2013).